UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
BROOKDALE UNIVERSITY HOSPITAL
& MEDICAL CENTER, INC.,

      Plaintiff,

   - against -

HEALTH INSURANCE PLAN OF GREATER     MEMORANDUM AND ORDER
NEW YORK, HIP HEALTH PLAN OF NEW       07-CV-1471 (RRM) (LB)
YORK, HIP INSURANCE COMPANY OF
NEW YORK, COGENT HEALTHCARE, INC.,
COGENT HEALTHCARE IPA OF NEW YORK,
INC., CENTRAL BROOKLYN MEDICAL
GROUP, P.C., HERITAGE NEW YORK IPA,
INC. d/b/a HEALTHCARE PARTNERS IPA
AND MANAGEMENT SERVICES
ORGANIZATION, and JOHN DOES 1-20,

      Defendants.
-----------------------------------------------------------X
MAUSKOPF, United States District Judge.

   Plaintiff Brookdale University Hospital & Medical Center ("Brookdale"), a not-for-profit hospital in Brooklyn, New York, commenced this action in April 2007, alleging that one of the major insurance companies with which it does business, together with others, has fraudulently foisted the costs of hospital care onto Brookdale in a manner that not only constitutes a breach of the parties' contract, but also amounts to a violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961, et seq. (2000).

   The named Defendants in this case are (1) Health Insurance Plan of Greater New York d/b/a HIP Health Plan of New York ("HIP-NY") and its subsidiary, HIP Insurance Company of New York ("HIPIC") (collectively, "HIP"); (2) Cogent Healthcare, Inc. and Cogent Healthcare IPA of New York, Inc. (collectively, "Cogent"); (3) Central Brooklyn Medical Group, P.C. ("CBMG");

1

and (4) Heritage New York IPA, Inc. d/b/a HealthCare Partners IPA and Management Services Organization ("HCP"). The unnamed Defendants are John Does 1 through 20, whom the Amended Complaint ("Complaint") describes as "senior officers and directors of defendants" (the "Doe Defendants").

Brookdale's Complaint asserts two federal claims: (1) a RICO Enterprise claim, see 18 U.S.C. § 1962(c), against HIP-NY and the Doe Defendants; and (2) a RICO Conspiracy claim, see 18 U.S.C. § 1962(d), against all Defendants – and three claims arising under New York state law – (3) a fraudulent inducement claim against all Defendants; (4) a breach of contract claim against HIP-NY; and (5) a claim of gross negligence and recklessness against Cogent.

Presently before the Court are three motions to dismiss, filed by HIP, Cogent, and CBMG/HCP, pursuant to Federal Rule of Civil Procedure 12(b)(6), seeking dismissal of all causes of action with the exception of the breach of contract claim against HIP-NY. For the reasons set forth below, the Defendants' motions are GRANTED as to both RICO claims.

## FACTS

The following facts are taken from the Complaint and are assumed true for purposes of the instant motions. See, e.g., Erickson v. Pardus, 551 U.S. 89, 127 S.Ct. 2197, 2200 (2007) (per curiam) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 572 (2007)). HIP-NY is a not-for-profit health maintenance organization ("HMO") based in New York. (Compl. ¶ 27, Ex. 1.) Cogent is a company providing "hospitalist" services, i.e., services involving doctors specially trained to deal with hospital practice and procedures, whose stated purpose is to increase the quality and efficiency of patient care. (Id. ¶¶ 22-23.) CBMG is a physicians group whose members have "privileges" to admit patients to Brookdale. (Id. ¶ 22.) HCP is a "Management Services Organization," providing

"Utilization Review" services for its clients. (Id. ¶ 41). Utilization Review ("UR") is a method by which HMOs determine whether treatment provided to their members is "medically necessary" and therefore subject to coverage. (Id. ¶ 30.)

In 1999, Brookdale and HIP-NY first entered into the contract through which Brookdale joined the HIP "network." Under the terms of their contract, Brookdale agreed to treat HIP-insured patients and HIP-NY agreed to "pay [Brookdale] for the provision of 'medically necessary' treatment to [HIP] members." (Id. ¶ 15.) The HIP-Brookdale contract was for an initial one-year term, to be automatically renewed for additional one-year periods unless terminated. (Id. ¶ 16.) As is common of arrangements between hospitals and HMOs, Brookdale offered discounted rates to HIP based on an expectation that HIP's large membership would generate more patient referrals for the hospital. (Id. ¶ 28.)

In late 2001, HIP-NY informed Brookdale that it wanted to implement a hospitalist oversight program involving CBMG who, for its part, promised to increase HIP member referrals to Brookdale. (Id. ¶ 22.) Although Brookdale already maintained a hospitalist program, HIP-NY and CBMG insisted that Cogent be used as a "consultant" to implement the hospitalist program involving HIP patients at Brookdale. (Id. ¶ 23.) Brookdale agreed, authorizing HIP-NY to bring Cogent into the hospital to coordinate certain hospitalist and UR services in connection with the treatment of HIP/CBMG patients. (Id. ¶¶ 23-24.) At the same time, HIP-NY additionally contracted with HCP, delegating to it certain UR functions. (Id. ¶ 42.)

Brookdale alleges that, after it implemented the foregoing arrangement with HIP, Cogent, CBMG, and HCP, the number of claim denials (also called "adverse determinations") increased dramatically. According to the Complaint, the Defendants "corrupted" the definition of "medical necessity" and routinely issued adverse determinations based on (1) clearly erroneous findings that

3

treatment was not medically necessary; (2) false allegations of delay against Brookdale; and (3) manipulation of the tally of compensable "days" for purposes of calculating the durations of hospital stays. (Id. ¶¶ 31-32.) The Complaint provides numerous examples of all three types of allegedly improper adverse determinations, each of which allegedly violated the HIP-Brookdale contract. The Complaint further alleges that "HIP-NY concealed from Brookdale Hospital its decision to abandon its representations and promises and thus fraudulently induced Brookdale to allow the annual renewal of its contract." (Id. ¶ 18.) In sum, Brookdale alleges a fraudulent scheme by the Defendants "to improperly shift to the Hospital the financial responsibility for paying for a substantial portion of the necessary medical services provided to HIP's members by Brookdale Hospital." (Id. ¶ 19, see also id. ¶ 76.)

To support its RICO Enterprise claim, Brookdale alleges that the Defendants engaged in a pattern of mail and wire fraud (and aiding and abetting the same) in violation of 18 U.S.C. §§ 1341 and 1343. (Id. ¶¶ 63-64.) Brookdale alleges that the defendants sent "contracts, clinical information concerning the medical care provided to HIP members, adverse determinations concerning medical services, correspondence, appeals from denial of payment and the denial of those appeals" via the Postal Service and commercial interstate carriers. (Id. ¶ 65.) In addition, Brookdale alleges that the Defendants transmitted "contracts, adverse determinations, and clinical information concerning the medical care provided to HIP members as well as correspondence" via the wires. (Id. ¶ 66.) Furthermore, Brookdale claims that HIP's and CBMG's representations in late 2001 – i.e., that CBMG would increase referrals if Brookdale implemented the Cogent hospitalist program – were communicated over the phone. (Id. ¶ 22.)

Brookdale also alleges that the Defendants sent "[r]equests for meetings to convince Brookdale to afford [sic] HIP-Cogent hospitalists to treat CBMG patients at Brookdale" via mail or

4

wire. (Id. ¶ 72.) In sum, according to the Complaint, "[t]his fraudulent scheme was executed, and made possible, by defendants and their agents placing with the Postal Service for delivery material essential to effectuating their fraudulent scheme, and by transmitting over the wires writings and information also necessary to execute their fraudulent scheme." (Id. ¶ 21).

## DISCUSSION

### I.  Motion to dismiss standard

In deciding whether to grant a motion to dismiss, the Court must "take as true all allegations in the complaint, and draw all reasonable inferences therefrom in the plaintiff's favor." Koppel v. 4987 Corp., 167 F.3d 125, 130 (2d Cir. 1999); see also Erickson, 551 U.S. at __, 127 S.Ct. at 2200 (citing Twombly, 550 U.S. at 572). The "complaint must plead 'enough facts to state a claim to relief that is plausible on its face.'" Ruotolo v. City of New York, 514 F.3d 184, 188 (2d Cir. 2008) (quoting Twombly, 550 U.S. 544 at 570). Allegations of fraudulent predicate acts under RICO are subject to the heightened pleading standard of Rule 9(b). See Fed. R. Civ. P. 9(b); First Capital Asset Mgmt., Inc. v. Satinwood, Inc., 385 F.3d 159, 178 (2d Cir. 2004).

Pursuant to Rule 9(b), "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). To satisfy this requirement, the complaint must: "'(1) specify the statements that the plaintiff contends were fraudulent; (2) identify the speaker; (3) state where and when the statements were made; and (4) explain why the statements were fraudulent.'" Lerner v. Fleet Bank, N.A., 459 F.3d 273, 290 (2d Cir. 2006) (quoting Mills v. Polar Molecular Corp., 12 F.3d 1170, 1175 (2d Cir. 1993)).

5

## II. Pleading requirements for alleged RICO violations

A plaintiff asserting RICO Enterprise violations under 18 U.S.C. § 1962(c) must allege: "(1) that the defendant (2) through the commission of two or more acts (3) constituting a 'pattern' (4) of 'racketeering activity' (5) directly or indirectly . . . participates in (6) an 'enterprise' (7) the activities of which affect interstate commerce or foreign commerce." W. Hartford v. Operation Rescue, 915 F.2d 92, 100 (2d Cir. 1990). "The requirements for RICO . . . conspiracy charges under § 1962(d) are less demanding: A 'conspirator must intend to further an endeavor which, if completed, would satisfy all of the elements of a substantive criminal offense, but it suffices that [she has adopted] the goal of furthering or facilitating the criminal endeavor.'" First Capital, 385 F.3d at 178 (quoting Baisch v. Gallina, 346 F.3d 366, 376-77 (2d Cir. 2003)).

To plead predicate acts of mail and wire fraud, a complaint must allege that defendants used the mails or wire transmissions in furtherance of a scheme to defraud. Powers v. British Vita, P.L.C., 57 F.3d 176, 184 (2d Cir. 1995) (citing 18 U.S.C. §§ 1341, 1343). While Brookdale need not prove that anyone was actually defrauded, see id. (citing United States v. Starr, 816 F.2d 94, 98 (2d Cir. 1987)), Brookdale must adequately allege intent to defraud. Id. Rule 9(b) allows plaintiffs to allege fraudulent intent generally, but the circumstances amounting to fraud must be averred "with particularity." Brookdale must therefore "provide some minimal factual basis for conclusory allegations of scienter that give rise to a strong inference" of fraudulent intent. Id. (citing Polycast Tech. Corp. v. Uniroyal, Inc., 728 F. Supp. 926, 935 (S.D.N.Y. 1989)). A complaint may give rise to a sufficient inference of fraudulent intent in two ways. First, a plaintiff may allege a motive for committing fraud and a clear opportunity for doing so. Id. (citing Beck v. Mfrs. Hanover Trust Co., 820 F.2d 46, 50 (2d Cir. 1987)); Polycast, 728 F. Supp. at 935. Second, a plaintiff may plead "circumstances indicating conscious behavior by the defendant, though the strength of the

circumstantial allegations must be correspondingly greater." Beck, 820 F.2d at 50 (citations omitted).

Courts have repeatedly cautioned that "[c]ivil RICO is an unusually potent weapon – the litigation equivalent of a thermonuclear device." Katzman v. Victoria's Secret Catalogue, 167 F.R.D. 649, 655 (S.D.N.Y. 1996) (quoting Miranda v. Ponce Fed. Bank, 948 F.2d 41, 44 (1st Cir. 1991)). Accordingly, "Civil RICO should not be used to transform a 'garden variety fraud or breach of contract case[] . . . into a vehicle for treble damages.'" Evercrete Corp. v. H-Cap, Ltd., 429 F. Supp. 2d 612, 622 (S.D.N.Y. 2006) (quoting Goldfine v. Sichenzia, 118 F. Supp. 2d 392, 394 (S.D.N.Y. 2000)); accord Kirk v. Heppt, 423 F. Supp. 2d 147, 149 (S.D.N.Y. 2006) (courts "must be wary of putative civil RICO claims that are nothing more than sheep masquerading in wolves' clothing") (quotation omitted).

### III. The Complaint fails to state a claim for mail and wire fraud

Brookdale alleges that the Defendants engaged in a pattern of racketeering activity through predicate acts of mail and wire fraud. Contrary to Brookdale's contentions, however, none of the facts alleged, nor any reasonable inference to be drawn from those facts, suggests that the Defendants have engaged in fraudulent activity. Although Brookdale has pled a claim for breach of contract, its allegations regarding predicate RICO acts are legally insufficient. To state a RICO claim predicated on acts of mail or wire fraud, a plaintiff must plead (1) the existence of a scheme to defraud; (2) the defendants' knowing or intentional participation in the scheme to defraud; and (3) the use of the mails or interstate wire communications in furtherance of the scheme. See Bernsein v. Misk, 948 F. Supp. 228, 238 (E.D.N.Y. 1997); see also City of New York v. Smokes-Spirits.com, Inc., 541 F.3d 425, 445-56 (2d Cir. 2008).

Read in the light most favorable to Brookdale, the facts alleged demonstrate that the Defendants participated in the unreasonable denial of insurance claims and failed to fulfill their contractual obligations to Brookdale. Claims based on failure to perform under a contract, however, do not state a claim for fraud. Great Earth Int'l Franchising Corp. v. Milks Dev., 311 F. Supp. 2d 419, 428 (S.D.N.Y. 2004). Under New York law, "where a party is merely seeking to enforce its bargain, a tort claim will not lie." N.Y. Univ. v. Continental Ins. Co., 87 N.Y.2d 308, 662 N.E.2d 763 (N.Y. 1995). The Second Circuit has likewise held that "a plaintiff is not allowed to 'dress-up' a breach-of-contract claim as a fraud claim." Cohen v. Koenig, 25 F.3d 1168, 1173 (2d Cir. 1994) (citing Triangle Underwriters, Inc. v. Honeywell, Inc., 604 F.2d 737 (2d Cir. 1979)). "RICO was not enacted for the purpose of providing a Federal forum for nearly every conceivable contract action under State law." Goldfine v. Sichenzia, 118 F. Supp. 2d 392, 399-400 (S.D.N.Y. 2000). Moreover, fraud claims premised on an "undisclosed intention to breach" a contract cannot be predicated on "a mere showing of nonperformance." Soper v. Simmons Int'l, Ltd., 632 F. Supp. 244, 249 (S.D.N.Y. 1986) (collecting cases).

Notwithstanding the unreasonable nature of the Defendants' alleged conduct, it amounts to nothing more than "nonperformance" under the HIP-Brookdale contract. In addition, misrepresentations relating to a contract do not rise to the level of a fraud claim unless they concern a matter that is "collateral or extraneous" to the contract. Great Earth, 311 F. Supp. 2d at 427. The only alleged misstatement that might be considered "collateral" to the HIP-Brookdale contract is CBMG's promise to increase its referrals if Brookdale implemented the HIP-Cogent hospitalist program. (Compl. ¶ 22.) This allegation fails to advance Brookdale's fraud-based claims, however, because that representation is not alleged to be false. Indeed, it was not the promise of increased referrals but the promise of reimbursement for medically necessary hospital treatment that

8

Brookdale claims to have been fraudulent. Because the alleged misrepresentations concerning payment for necessary treatment were contained within the HIP-Brookdale contract, however, those alleged misrepresentations cannot be considered collateral or extraneous to the policy. See Great Earth, 311 F. Supp. 2d at 427.

Certainly, Brookdale has alleged facts sufficient to suggest that the Defendants' participation in the widespread and unreasonable denials of Brookdale's claims was part of some form of wrongful conduct, including an alleged breach of contract. An allegation of wrongful conduct, however, is insufficient to plead predicate acts of wire or mail fraud, "since 'not every use of the mails or wires in furtherance of an unlawful scheme to deprive another of property constitutes mail or wire fraud.'" McLaughlin v. Anderson, 962 F.2d 187, 192 (2d Cir. 1992) (quoting McEvoy Travel Bureau, Inc. v. Heritage Travel Inc., 904 F.2d 786, 791 (1st Cir. 1990)); see also United States v. Kreimer, 609 F.2d 126, 128 (5th Cir. 1980) ("The [mail fraud] statute does not reject all business practices that do not fulfill expectations, nor does it taint every breach of a business contract.") In short, "[t]he mail fraud statute requires some element of deception." McLaughlin, 962 F.2d at 192 (citing 18 U.S.C. § 1341); see also Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406 (3d Cir. 1991) (scheme "must involve some sort of fraudulent misrepresentation or omissions reasonably calculated to deceive persons of ordinary prudence and comprehension"); McEvoy Travel Bureau, 904 F.2d at 791 (holding that "the scheme must be intended to *deceive* another") (emphasis in original); United States v. Starr, 816 F.2d 94, 98 (2d Cir. 1987) (requiring use of a scheme or artifice).

Nothing in the Complaint indicates how the "contracts, clinical information concerning the medical care provided to HIP members, adverse determinations concerning medical services, correspondence, appeals from denial of payment and the denial of those appeals" were "deceptive."

Although the Defendants' mail and wire communications need not themselves be fraudulent per se, so long as they were transmitted "in furtherance" of a scheme to defraud, see In re Sumitomo Copper Litig., 995 F. Supp. 451, 456 (S.D.N.Y. 1998), Brookdale must still "delineate, with adequate particularity in the body of the complaint, the specific circumstances constituting the overall fraudulent scheme." Id. Again, while Brookdale has adequately pled facts to allege that the Defendants' actions were wrongful and violative of the HIP-Brookdale contract, it has not alleged facts from which to infer that those actions were sufficiently fraudulent or deceptive to make out a claim under RICO.[1]

## IV. The Complaint fails to plead fraud allegations with particularity

Rule 9 of the Federal Rules of Civil Procedure requires that "in all averments constituting fraud and mistake, the circumstances constituting fraud and mistake shall be stated with particularity." Fed. R. Civ. P. 9(b). Therefore, in order to sustain a RICO cause of action with predicate acts of mail and wire fraud, Plaintiffs must plead the fraud aspects of their allegations with particularity. Smokes-Spirits, 541 F.3d at 446 ("'Allegations of mail [or wire] fraud must be made with the particularity required by Federal Rule of Civil Procedure 9(b).'") (quoting McLaughlin v. Anderson, 962 F.2d 187, 191 (2d Cir. 1992)) (alteration in original).

The Second Circuit has held that "to satisfy the particularity requirement of Rule 9(b), a complaint must adequately specify the statements it claims were false or misleading, give particulars as to the respect in which plaintiff contends the statements were fraudulent, state when

---

[1] In addition, Brookdale's allegations of wire fraud are legally deficient because they fail to allege that the relevant wire communications were of an interstate nature. When pleading wire fraud as a predicate act under RICO, "[p]urely intrastate communications are not sufficient." 500 F. Supp. 2d 197, 203 (E.D.N.Y. 2007). Accordingly, wire fraud allegations fail in the absence of any claim that the relevant "wire communications occurred in interstate or foreign commerce." Id. at 204; see also Bernstein v. Misk, 948 F. Supp. 228, 239 (E.D.N.Y. 1997) ("[W]here all parties are New York residents, 'all telephone calls are presumed to be intrastate and, absent any indication otherwise, the predicate act of wire fraud is not stated.'" (quoting McCoy v. Goldberg, 748 F. Supp. 146, 154 (S.D.N.Y. 1990))). The Complaint is devoid of any factual allegations from which it could be inferred that the relevant wire communications were of an interstate nature. Brookdale's wire fraud allegations fail for this reason as well.

and where the statements were made, and identify those responsible for the statements." Cosmas v. Hassett, 886 F.2d 8, 11 (2d Cir. 1989); see also Mills, 12 F.3d at 1176 ("[A]llegations of predicate mail and wire fraud acts should state the contents of the communications, who was involved, where and when they took place, and explain why they were fraudulent.") (citation omitted).

Brookdale has not met this burden. As discussed above, Brookdale has failed to allege any instance of fraud, much less allege it with the particularity required by Rule 9(b). See Chamberlin v. Hartford Fin. Servs., No. 05 Civ. 2650 (AKH), 2005 U.S. Dist. LEXIS 17498, at *7-11 (S.D.N.Y. Aug. 19, 2005) (dismissing civil RICO claims predicated on insurance company's alleged pattern of wrongfully denying coverage of insurance claims). Indeed, the Complaint does not provide any examples of specific fraudulent behavior by any of the Defendants. Instead, Brookdale describes numerous examples of what Brookdale claims were patently groundless denials of insurance claims. Once again, these examples may establish, at best, particular instances of breach of contract by HIP and/or its agents, not fraud. These allegations do not constitute the "stringent adherence to the particularity requirement" that courts require in RICO cases "where the predicate fraud allegations provide the only link to federal jurisdiction." Clifford v. Hughson, 992 F. Supp. 661, 666 (S.D.N.Y. 1998). Moreover, these allegations do not rise to the level of "conscious behavior" indicative of the Defendants' fraudulent intent. See Beck, 820 F.2d at 50.

Nor has Brookdale pled facts sufficient to establish the Defendants' fraudulent intent under the "motive and opportunity" standard. See Powers, 57 F.3d at 184. The only "motive" ascribed to the Defendants is a generalized profit motive that could be imputed to any company, and thus has been consistently rejected as a basis for inferring fraudulent intent. See Chill v. Gen. Elec. Co., 101 F.3d 263, 268 (2d Cir. 1996); see also Salzmann v. Prudential-Bache Securities, No. 91 Civ. 4253 (KTD), 1993 U.S. Dist. LEXIS 3066, at *22 (S.D.N.Y. Mar. 12, 1993) (plaintiff's "assertion that

11

the defendants were motivated by large profits is also insufficient to infer a motive and opportunity for fraud, or conscious behavior by defendants in furtherance of such fraud" (citing Lydon v. Estate of Winston, 715 F. Supp. 600, 601 (S.D.N.Y. 1989))).

Brookdale's allegations also fail to satisfy the "opportunity" prong of this method for pleading fraudulent intent. "When courts speak of 'clear opportunity' to commit fraud," they typically envision circumstances where the defendant is "well positioned to carry out the fraudulent transaction, such as when he possesses the necessary trust and authority." Powers, 57 F.3d at 185 (citing Turkish v. Kasenetz, 27 F.3d 23, 28 (2d Cir. 1994)). Brookdale's allegations, as pled, do not even approach these circumstances. Brookdale alleges only that the Defendants' actions in denying reimbursement were patently groundless and abusive. These conclusory allegations do not plausibly suggest the Defendants' clear opportunity to commit fraud. To the contrary, Brookdale employed the very physicians who initially found the treatment – whose coverage was later denied – to be medically necessary. As such, any suggestion that the Defendants were "well positioned" to deceive Brookdale regarding the medical necessity of that treatment is implausible on its face. In sum, the "opportunity" element of a fraud claim is undermined by the open and obvious nature of the Defendants' conduct and the relative positions of the parties.

Finally, this reasoning applies with equal force to Brookdale's allegation that the Defendants fraudulently induced the hospital's acquiescence to the annual renewal of its contract with HIP. Again, Brookdale's own doctors rendered the treatment they deemed medically necessary. Brookdale was well aware of the extent to which the Defendants denied coverage of that treatment and, insofar as the Defendants' adverse determinations were unreasonable, Brookdale possessed this information as well. Although these allegations may make out a breach of contract claim, they do not rise to the level of fraudulent activity required for the application of RICO.

12

## CONCLUSION

For the foregoing reasons, the Court finds that Brookdale has failed to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). Accordingly, the Defendants' motions to dismiss are GRANTED with respect to Brookdale's RICO Enterprise and Conspiracy claims. In light of this ruling, the Court must address (1) whether to afford Brookdale an opportunity to file a second amended complaint, and (2) if not, whether to exercise supplemental jurisdiction over the remaining state law claims, see 28 U.S.C. § 1367(c)(3). Before deciding those issues, however, the Court will hold a conference to provide all parties an opportunity to be heard.

The Court has scheduled a conference for Wednesday, April 29, 2009, at 11:00 a.m., in Courtroom 6 North (4th Floor), United States Courthouse, 225 Cadman Plaza East, Brooklyn, New York. Counsel for all parties must be present. In advance, Brookdale shall file a letter, not to exceed three (3) pages, on or before April 20, 2009, indicating whether it intends to seek leave to file a second amended complaint and, if so, the grounds therefor. Each Defendant may file a letter in response, not to exceed three (3) pages, on or before April 27, 2009.

SO ORDERED.

Dated: Brooklyn, New York
March 31, 2009

_____
ROSLYNN R. MAUSKOPF
United States District Judge